IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LEWANDA TERRIEL S.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 19-1146** |
| v. | * | |
| | * | |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |

\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Lewanda S. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 12), Defendant's Motion for Summary Judgment (ECF No. 13), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 14).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

# I

## Background

On June 6, 2018, Administrative Law Judge ("ALJ") Dierdra Howard held a hearing in Baltimore, Maryland, where Plaintiff and a vocational expert ("VE") testified. R. at 36-80. The ALJ thereafter found on July 6, 2018, that Plaintiff was not disabled from her amended alleged onset date of disability of November 14, 2016, through the date of the ALJ's decision. R. at 12-35. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since November 14, 2016, and that her degenerative disc disease, asthma, carpal tunnel syndrome, chronic obstructive pulmonary disease, and affective disorder were severe impairments. R. at 17-18. She did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, including § 12.04. R. at 19-21. In comparing the severity of Plaintiff's mental impairments to the listed impairments, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. R. at 20.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except: [Plaintiff] can occasionally operate hand controls and push and pull with the bilateral upper extremities. [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. [Plaintiff] can never climb ladders, ropes and scaffolds. [Plaintiff] must avoid extreme heat, humidity, and hazards, as well as fumes, odors, dusts, gasses and poor ventilation. [Plaintiff] can understand, remember, and carry out simple instructions. [Plaintiff] can maintain concentration with normal breaks and can make simple work-related decisions. [Plaintiff] can have occasional interaction with the general public.

R. at 21.³  In light of this RFC and the VE's testimony, the ALJ found that, although she could not perform her past relevant work as a child monitor, front-desk clerk/receptionist, and cashier, Plaintiff could perform other work in the national economy, such as an assembler, inspector, or sorter.  R. at 28-29.  The ALJ thus found that Plaintiff was not disabled "from May 12, 2012," through July 6, 2018.  R. at 29-30.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on April 18, 2019, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

---

³ "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

5

education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that remand is warranted because the ALJ erred by refusing to hear the testimony of her treating therapist, contravening the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX").  Pl.'s Mem. Supp. Mot. Summ. J. 4-10, ECF No. 12-1.  She further maintains that, contrary to the ALJ's decision, her mental impairment meets the criteria of 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04A and 12.04B.  *Id.* at 10-12.  Plaintiff also argues that the ALJ failed to comply with *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  *Id.* at 12-13.  She then asserts that the ALJ did not properly evaluate the opinions of her treating physicians according to 20 C.F.R. § 404.1527.  *Id.* at 13-16.  Plaintiff finally argues that substantial evidence does not support the ALJ's RFC assessment as required by 20 C.F.R. § 404.1545.  *Id.* at 16-19.  For the reasons discussed below, the Court remands this case for further proceedings.

### A.    HALLEX and the ALJ's Duty to Develop the Record

Plaintiff first contends that the ALJ disregarded HALLEX I-2-5-18 by declining to hear testimony from her treating therapist (R. 43-44, 67-68).  Pl.'s Mem. Supp. Mot. Summ. J. 4-10, ECF No. 12-1.  HALLEX is "a policy manual written by the Social Security Administration to

provide policy and procedural guidelines to ALJs and other staff members." *Laur v. Astrue*, Civil Action No. TMD 08-112, 2010 WL 481318, at *2 (D. Md. Feb. 4, 2010). "[N]o circuit has held that the HALLEX creates *constitutional* rights because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights." *Davenport v. Astrue*, 417 F. App'x 544, 547-48 (7th Cir. 2011). "Although the Fourth Circuit has not addressed the issue, 'the persuasive authority among the District Courts holds that HALLEX lacks force of law.' As such, an error in the application of HALLEX guidelines in the present case, if any, provides no basis for remand." *Landrum v. Berryhill*, No. 1:17CV940, 2019 WL 718550, at *7 (M.D.N.C. Feb. 20, 2019) (citations omitted). The Court thus does not review allegations of noncompliance with the manual. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *see Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009).

To the extent that Plaintiff argues that the ALJ failed in her duty to develop the record, her argument is unavailing as well. "[T]he administrative hearing process is not an adversarial one, and an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173-74 (4th Cir. 1986)). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial," however. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). Here, Plaintiff's counsel did not object at

the hearing and replied, "Okay," when the ALJ stated that she was relying on the form opinion of Ms. Bates (R. at 44, 68), so Plaintiff does not show unfairness or prejudice from the ALJ's purported error. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation."). Plaintiff's argument regarding the ALJ's failure to develop the record is thus unavailing.

**B.     Listing 12.04**

Plaintiff contends that her mental impairment meets the criteria of 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 ("Listing 12.04"). Pl.'s Mem. Supp. Mot. Summ. J. 10-12, ECF No. 12-1. "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part II and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing

authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the four areas is rated "none" or "mild," then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662, 659 (4th Cir. 2017). The "failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." *Patterson*, 846 F.3d at 662.

Listing 12.04, which relates to depressive, bipolar, and related disorders, has three paragraphs, A, B, and C. Listing 12.04 is satisfied by meeting the criteria in paragraphs A and

either B or C.  The ALJ found that "[t]he severity of [Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.04."  R. at 19.

> In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

R. at 19-20.  The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information and in adapting or managing herself.  R. at 20-21.  The ALJ also found that Plaintiff had moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace.  R. at 20.  The ALJ thus found that Plaintiff's mental impairment did not satisfy the paragraph B criteria of Listing 12.04.  R. at 21.

Plaintiff contends, however, that, contrary to the ALJ's decision, her mental impairment met the criteria of paragraphs A and B of Listing 12.04.  As for the paragraph B criteria, Plaintiff points to the opinion of Ms. Lida Bates, a licensed clinical social worker, that she had, among other things, marked restriction in her ability to concentrate, persist, or maintain pace.  Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 12-1 (citing R. at 450-52).

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527.  That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist.  The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source."  Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (citations omitted).

> Social Security Ruling 06-3p instructs ALJs to consider evidence from sources other than "acceptable medical sources," such as the opinions of physician assistants, because such "other sources" evidence "may provide insight into the severity of the impairment(s)" established by acceptable medical sources. . . . The ruling also instructs that ALJs "generally should explain the weight given to opinions from these 'other sources.'"

*Jones v. Berryhill*, 681 F. App'x 252, 256 (4th Cir. 2017) (per curiam).[5]

Here, Plaintiff concedes that Ms. Bates is not an acceptable medical source (Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 12-1), as the ALJ found (R. at 27). *See* 20 C.F.R. § 404.1502. "Nevertheless, the [ALJ] considered her findings of moderate and marked limitations in mental functioning but find that those assessments are generally inconsistent with medical evidence." R. at 27. "[Plaintiff's] mental status examinations in her primary care notes and her consultative examination with Dr. Ansel indicate she showed signs of depression such as depressed mood and tearfulness, but that her thought process was still logical and her concentration and cognition were not overwhelmingly diminished." R. at 27; *see* R. at 432-39. "Similarly, the [ALJ] gives little weight to the February 2018 letter from Ms. Bates indicating [Plaintiff] has limited ability to work." R. at 27; *see* R. at 311-14. "Again, Ms. Bates is not an acceptable medical source as she is a social worker and not a psychologist or psychiatrist." R. at 27. "Further, [Plaintiff's] treatment records do not support the severity of impairment that would cause [her] to have limited ability to work." R. at 27. The Court "may not reweigh this evidence, and [the Court]

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [Plaintiff] was disabled." *Sharp v. Colvin*, 660 F. App'x 251, 258 (4th Cir. 2016). Plaintiff's argument that substantial evidence does not support the ALJ's findings at step three regarding Listing 12.04 is thus without merit.

C. **Plaintiff's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace**

Plaintiff also maintains that, contrary to *Mascio*, the ALJ did not consider her moderate limitation in concentrating, persisting, or maintaining pace when assessing her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 12-13, ECF No. 12-1. The Fourth Circuit held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* The Fourth Circuit, however, "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Rather, when "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (quoting *Winschel*, 631 F.3d at 1180).

Here, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. R. at 20. The ALJ then found that the restrictions in her RFC assessment accommodated Plaintiff's mental limitations, explaining the findings in the evidence of record regarding her mental status. R. at 26. The ALJ gave great weight to the April 2017 opinion of Jeannie Berger, Ph.D., the state agency medical consultant who opined that, despite her moderate limitation in concentrating, persisting, or maintaining pace, Plaintiff could, among other things, "carry out short/simple instructions, perform within a schedule, sustain a routine workweek, work with others and make simple work-related decisions." R. at 108, 114. Dr. Berger also opined that Plaintiff had "[m]oderate limitations carrying out detailed instructions, maintaining extended concentration (greater than 2 hrs)." R. at 114. Dr. Berger ultimately found that, despite these limitations, Plaintiff could perform simple and unskilled work. R. at 114. The ALJ found that this opinion was "generally consistent with the medical records indicating [Plaintiff] showed signs of depression such as depressed mood and tearfulness, but that her thought was still logical and her concentration and cognition were not overwhelmingly diminished." R. at 27. Thus, the ALJ considered Plaintiff's limitation in concentrating persisting, or maintaining pace and explained why she found Plaintiff capable of understanding, remembering, and carrying out simple instructions; maintaining concentration with normal breaks; making simple, work-related decisions; and having occasional interaction with the general public. *See Jones v. Saul*, No. CV 0:19-1069-PJG, 2020 WL 1149723, at *6 (D.S.C. Mar. 10, 2020) ("Here, in formulating [the claimant's RFC], the ALJ observed that during visits in 2015, [the claimant's] concentration and memory were found adequate, and the ALJ gave significant weight to [the treating psychiatrist's] finding that [the claimant] could complete basic activities of daily living; relate to others; and complete simple, routine tasks without difficulty. Thus, unlike in *Mascio*, the ALJ considered

[the claimant's] limitations in this area in formulating her [RFC] and explained why she limited [the claimant] to simple repetitive tasks with only occasional interaction with the general public and coworkers. Accordingly, [the claimant] has failed to demonstrate that the ALJ's findings and mental limitations are not sufficiently explained or unsupported by substantial evidence."); *accord Michael F. v. Saul*, Civil Case No. TJS-19-775, 2020 WL 1074572, at *3 (D. Md. Mar. 5, 2020) ("The ALJ complied with *Mascio* by explaining why a limitation to 'unskilled, routine, and repetitive tasks involving only simple work-related decisions' was sufficient to accommodate [the claimant's] moderate limitations in concentration, persistence, and pace."); *Jolanda J. v. Saul*, Civil No. TJS-18-3769, 2020 WL 1060452, at *3 (D. Md. Mar. 5, 2020). For these reasons, remand under *Mascio* is not warranted. *See Howard v. Saul*, No. 3:19-CV-00531-KDB, 2020 WL 2199629, at *5 (W.D.N.C. May 6, 2020) ("In sum, the ALJ addressed [Plaintiff's] moderate limitations in concentration, persistence, or pace and properly explained why the medical evidence supported an RFC that limited [Plaintiff] to simple, routine tasks. The ALJ referenced the various medical records that showed there was no need for a limitation in concentration, persistence, or pace and that [Plaintiff] was capable of performing simple, routine tasks. His explanation is supported by the record. Accordingly, this Court holds that the ALJ's findings and mental limitations included in the RFC are sufficiently explained as required under *Mascio*.").

**D.     The ALJ's RFC Assessment**

Plaintiff next argues that substantial evidence does not support the ALJ's assessment of her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 16-19, ECF No. 12-1. The Court remands this case because the ALJ failed to build a logical bridge from the evidence to her conclusion about

15

Plaintiff's RFC to perform sedentary work.  Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote and citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Here, the ALJ did not explain her conclusion that, on the basis of the evidence in the record, Plaintiff could actually perform the tasks required by sedentary work.  *See* Social Security Ruling 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("'Occasionally' means occurring from very little up to one-third of the time.  Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).  Rather, the ALJ merely stated that a medical source's opinion (R. at 654-55) that Plaintiff "cannot sit for more than 2 hours and is incapable of work is inconsistent with medical evidence that [she] is capable of ambulating independently and engaging in a reasonable degree of range of motion to perform work at the sedentary exertional level" (R. at 27).  "The existing medical evidence suggests that [Plaintiff] has back and neck pain from her cervical and lumbar [degenerative disc disease], but that she can still function at a sedentary exertional level . . . ."  R. at 25.  The ALJ, however, "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'"  *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe*, 826 F.3d at 189).  An ALJ's failure to do so constitutes reversible error.  *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017); *see Sunil M. v. Berryhill*, No. 8:18-CV-274-GLS, 2019 WL 1077685, at *3 (D. Md. Mar. 6, 2019) ("[A]lthough the ALJ referenced Plaintiff's lower back pain, knee pain, and heart problems, there is no logical bridge connecting this information to the conclusion made, specifically, how those symptoms result in Plaintiff being able to only perform sedentary work.").  In short, because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the

Court remands this case for further explanation regarding Plaintiff's RFC.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694).

Because the Court remands on other grounds, it does not address her remaining arguments.  In any event, the ALJ also should address these other issues identified by Plaintiff. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues.").  On remand, when evaluating Plaintiff's subjective complaints, the ALJ should consider the type of activities she can perform, the extent to which she can perform them, and how her activities show that she can persist through an eight-hour workday.  *See Woods*, 888 F.3d at 694-95; *Brown*, 873 F.3d at 263.

## V

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.  Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: May 29, 2020                                           /s/
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge